UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JIYA CANADY,

                              Plaintiff,

        -v-

CORRECT CARE SOLUTIONS;
DOCTOR HAMAD SKINNER; SGT.
ROBERTS; and WESTCHESTER
COUNTY,

                              Defendants.

---

No. 15-CV-4893 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances</u>:

Jiya Canady
Bronx, NY
*Pro Se Plaintiff*

James C. Freeman, Esq.
Kent Hazzard, LLP
White Plains, NY
*Counsel for Defendants Correct Care Solutions, LLC and Hamad Skinner, DDS*

Taryn A. Chapman-Langrin, Esq.
Office of the Westchester County Attorney
White Plains, NY
*Counsel for Defendants Sergeant Roberts and Westchester County*

KENNETH M. KARAS, District Judge:

        Plaintiff Jiya Canady ("Plaintiff") brings this pro se Action asserting claims under 42

U.S.C. § 1983 and New York State law, alleging that Correct Care Solutions, LLC ("CCS"),

Hamad Skinner, DDS ("Dr. Skinner," and together with CCS, "CCS Defendants"), Sergeant

Roberts ("Roberts") and Westchester County, (the "County," and together with Roberts, "County

Defendants"), violated his constitutional rights in connection with dental care provided to

Plaintiff at Westchester County Jail.  (*See* Compl. (Dkt. No. 1).)[1]  Before the Court is a Motion for Summary Judgment on behalf of CCS Defendants, (*see* Dkt. No. 41), and a Motion To Dismiss on behalf of County Defendants, (*see* Dkt. No. 48).  For the reasons to follow, the Motions are granted.

## I.  Background

Due to the posture of this Action, in recounting the factual background, the Court cites to both the allegations in the Complaint and the Parties' Local Civil Rule 56.1 statements.  To the extent these documents differ in their presentation of the facts, the Court notes as such.

### A.  Factual Background

On February 26, 2013, Plaintiff underwent an annual dental evaluation by Dr. Skinner and a dental assistant.  (*See* Compl. 3 (Dkt. No. 1); 56.1 Statement ("Defs.' 56.1") ¶ 6 (Dkt. No. 46); Pl.'s Statement in Opp'n to Rule 56.1 Mot. for Summ. J. ("Pl.'s 56.1") ¶ 6 (Dkt. No. 53).)[2]  Both an x-ray and exam were performed, during which Dr. Skinner determined that Plaintiff had four cavities requiring treatment.  (*See* Compl. 3; Defs.' 56.1 ¶ 6; Pl.'s 56.1 ¶ 6.)  Plaintiff declined treatment at that time, "[b]ut agreed to think about it over the month or so it would take to schedule the procedure."  (Compl. 3; *see also* Defs.' 56.1 ¶ 6; Pl.'s 56.1 ¶ 6.)  One month later, Plaintiff "was called back to have the procedure" and again declined treatment, stating that he "ha[d] no problems with [his] teeth and . . . no pain."  (Compl. 3; *see also* Defs.' 56.1 ¶ 6; Pl.'s 56.1 ¶ 6.)

---

[1] Since the time of the alleged violations, Defendant Roberts has been promoted to the position of Captain.  (*See* Defs.' Cty. of Westchester and Sergeant Roberts Mem. of Law in Supp. of Mot. To Dismiss the Compl. 1 (Dkt. No. 50).)

[2] Plaintiff's Complaint consists of a standard prisoner complaint form, along with several handwritten pages and attachments.  (*See generally* Compl.)  Page numbers refer to the ECF-generated page number in the upper right-hand corner of the page.

On January 28, 2014, Plaintiff had a second annual evaluation where an exam and x-ray were again performed. (*See* Compl. 3; Defs.' 56.1 ¶ 7; Pl.'s 56.1 ¶ 7.) Dr. Skinner informed Plaintiff that he had "[eight] cavities that needed treatment as soon as possible." (Compl. 3; *see also* Defs.' 56.1 ¶¶ 7–8; Pl.'s 56.1 ¶¶ 7–8.) Plaintiff was "[e]xtremely alarmed by this information" and agreed to begin treatment that day on the left side of his mouth. (Compl. 3–4; *see also* Defs.' 56.1 ¶ 8; Pl.'s 56.1 ¶ 8.) Five hours after the treatment, Plaintiff informed the facility medical director that he was experiencing discomfort in his mouth. (*See* Compl. 4.) Plaintiff's blood pressure was taken, reported elevated, and ordered to be monitored. (*See id.*)

On January 29, 2014, while attempting to eat for the first time since the procedure, Plaintiff "felt a most powerful pain slowly spread from [his] teeth to the whole left side of [his] face, for several minutes." (*Id.*) When Plaintiff avoided using the left side of his mouth to eat and drink, the pain slowly subsided. (*See id.*)

On February 12, 2014, Plaintiff was called to the facility dentist office "to complete the treatment on the right side of [his] mouth," but due to the pain that Plaintiff was experiencing on the left side of his mouth, he declined to complete treatment on the right side. (*Id.*; *see also* Defs.' 56.1 ¶ 9; Pl.'s 56.1 ¶ 9.) Plaintiff was given a "refusal of treatment form to sign," but was not given a "plan to address [his] inability to chew using the teeth . . . treated a month prior." (Compl. 4; *see* Decl. in Supp. of Mot. for Summ. J. ("Freeman Decl.") Ex. C, at 2 (Dkt. No. 43).)

On February 21, 2014, Plaintiff filed a grievance with Roberts, providing the details of his procedure and pain and "several possible solutions as a way of resolving [his] complaint against dental staff." (Compl. 4; *see also* Defs.' 56.1 ¶ 10(a); Pl.'s 56.1 ¶ 10(a).)[3] Plaintiff's

[3] CCS Defendants' statement pursuant to Local Civil Rule 56.1 includes two paragraphs labelled "10." (*See* Defs.' 56.1.) The Court will refer to the first of the two paragraphs as 10(a), and the second as 10(b).

grievance and a subsequent appeal were denied.  (*See* Compl. 5; *see also* Defs.' 56.1 ¶ 10(a); Pl.'s 56.1 ¶ 10(a).)  Plaintiff alleges that Roberts refused to give him any copies of the grievance or appeal.  (*See* Compl. 8.)

On March 3, 2014, "the day after [his] appeal," Plaintiff was transferred from Westchester County Jail to Queens Private Detention Center.  (*Id.* at 5, 8; *see also* Defs.' 56.1 ¶ 10(b); Pl.'s 56.1 ¶ 10(b).)  Upon arrival at the new facility, Plaintiff submitted an emergency request to see a dentist and was given an appointment with American Mobile Dental.  (*See* Compl. 5; Defs.' 56.1 ¶ 10(b); Pl.'s 56.1 ¶ 10(b).)  The dentist recommended that certain "fillings that [Dr.] Skinner did[] be replaced," and subsequently replaced them.  (Compl. 5; *see also* Defs.' 56.1 ¶ 10(b); Pl.'s 56.1 ¶ 10(b).)  Plaintiff continued to experience pain following this procedure.  (*See* Compl. 5.)

In April 2015, Plaintiff had an annual dental evaluation with American Mobile Dental, during which an x-ray and exam were performed.  (*See id.*; Defs.' 56.1 ¶ 11; Pl.'s 56.1 ¶ 11.)  The dentist determined that Plaintiff needed replacement of two additional fillings done by Dr. Skinner.  (*See* Compl. 5; Defs.' 56.1 ¶ 11; Pl.'s 56.1 ¶ 11.)  The replacements were performed on May 8, 2015.  (*See* Compl. 5; Defs.' 56.1 ¶ 11; Pl.'s 56.1 ¶ 11.)  Following the procedure, the dentist conducted an x-ray and an exam and determined that "there was no decay found in any of [Plaintiff's] teeth."  (Compl. 5.)[4]  Plaintiff was "[s]hocked beyond belief" and requested and received a copy of his patient chart and x-ray.  (*Id.*)

---

[4] In their 56.1 statement, CCS Defendants assert that the dentist for American Mobile Dental, Dr. Richter, "removed the decay in these teeth," and "replaced the temporary fillings with composite fillings."  (Defs.' 56.1 ¶ 11.)  Plaintiff objects to the statement regarding removal of decay.  (*See* Pl.'s 56.1 ¶ 11.)

In light of the information that there was no treatment needed in the teeth Dr. Skinner had scheduled for treatment, Plaintiff determined that he had "required no treatment at all" and that "[t]he procedures already performed [were] unnecessary." (*Id.* at 6.)

Plaintiff seeks "an injunction against Correct Care Solutions and [Dr.] Hamad Skinner, to prohibit any further unnecessary medical procedures on County Jail inmates," as well as "[a]n order that Westchester County [Department of Corrections and Community Supervision ('DOCCS')] and it[]s staff honor [p]atient/inmate request[s] for information, including copies of medical records and paper generated due to formal complaints," and "that all inmate complaints of pain to medical personnel at least [b]e scheduled for prompt evaluation, if not immediately addressed." (*Id.* at 8.) Plaintiff also seeks compensation in the amount of $500 per day from CCS and $500 per day from Westchester County, $100,000 "for whole mouth restoration by a competent dentist," punitive damages in the amount of $3,000,000," and legal fees. (*Id.* at 9.)

B.  Procedural History

Plaintiff filed his Complaint on June 19, 2015. (*See* Dkt. No. 1.) The Court issued an Order of Service on July 14, 2015. (*See* Dkt. No. 3.) CCS Defendants filed an Answer on November 9, 2015. (*See* Dkt. No. 8.) On June 3, 2016, Magistrate Judge Judith C. McCarthy issued an Order of Service for County Defendants. (*See* Dkt. No. 27.)

On September 14, 2016, CCS Defendants filed their Motion for Summary Judgment and accompanying papers. (*See* Dkt. Nos. 41–46.) On September 16, 2016, County Defendants filed their Motion To Dismiss and accompanying papers. (*See* Dkt. Nos. 48–50.)[5] Plaintiff filed his

---

[5] During a telephonic conference on August 19, 2016, Plaintiff indicated that he believed discovery was complete. (*See* Dkt. (minute entry for Sept. 28, 2016).) County Defendants confirmed as much in a letter to the Court dated September 27, 2016. (*See* Dkt. No. 52.) Accordingly, on September 28, 2016, Judge McCarthy deemed discovery complete. (*See id.*)

oppositions to both Motions on October 12, 2016, (*see* Dkt. Nos. 53–55), and CCS Defendants

filed their papers in reply on November 1, 2016, (*see* Dkt. Nos. 56–57).  County Defendants did

not file a reply.  (*See* Dkt.)

## II.  Discussion

The Court first addresses CCS Defendants' Motion for Summary Judgment and then

turns to County Defendants' Motion To Dismiss.

### A.  Motion for Summary Judgment

#### 1.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir.

2014) (same).  "In determining whether summary judgment is appropriate," a court must

"construe the facts in the light most favorable to the non-moving party and . . . resolve all

ambiguities and draw all reasonable inferences against the movant."  *Brod v. Omya, Inc.*, 653

F.3d 156, 164 (2d Cir. 2011) (internal quotation marks omitted); *see also Borough of Upper

Saddle River v. Rockland Cty. Sewer Dist. No. 1*, 16 F. Supp. 3d 294, 314 (S.D.N.Y. 2014)

(same).  Additionally, "[i]t is the movant's burden to show that no genuine factual dispute

exists."  *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also

Aurora Commercial Corp. v. Approved Funding Corp.*, No. 13-CV-230, 2014 WL 1386633, at *2

(S.D.N.Y. Apr. 9, 2014) (same).  "However, when the burden of proof at trial would fall on the

nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to

the trier of fact on an essential element of the nonmovant's claim," in which case "the

nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue

of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alterations and internal quotation marks omitted). Further, "[t]o survive a [summary judgment] motion . . . , [a nonmovant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), and "cannot rely on the mere allegations or denials contained in the pleadings," *Walker v. City of New York*, No. 11-CV-2941, 2014 WL 1244778, at *5 (S.D.N.Y. Mar. 26, 2014) (internal quotation marks omitted) (citing, inter alia, *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009)).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (internal quotation marks omitted). At summary judgment, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod*, 653 F.3d at 164 (internal quotation marks omitted); *see also In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* MDL No. 1358, No. M21–88, 2014 WL 840955, at *2 (S.D.N.Y. Mar. 3, 2014) (same). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharm. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (internal quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

Finally, the Second Circuit has instructed that when a court considers a motion for summary judgment, "special solicitude" should be afforded a pro se litigant, *see Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988); *Mercado v. Div. of N.Y. State Police*, No. 96-CV-235,

2001 WL 563741, at *7 (S.D.N.Y. May 24, 2001) (same), and a court should construe "the submissions of a pro se litigant . . . liberally" and interpret them "to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (italics and internal quotation marks omitted).

### 2. Analysis

#### a. Eighth Amendment

"The Eighth Amendment forbids 'deliberate indifference to serious medical needs of prisoners . . . .'" *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "A convicted prisoner's claim of deliberate indifference to his medical needs by those overseeing his care is analyzed under the Eighth Amendment because the right the plaintiff seeks to vindicate arises from the Eighth Amendment's prohibition of cruel and unusual punishment." *Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009) (footnote and internal quotation marks omitted), *overruled on other grounds*, *Darnell v. Pineiro*, 849 F.3d 17 (2d Cir. 2017).[6] "There are two elements to a claim of deliberate

---

[6] The status of a plaintiff as either a convicted prisoner or pretrial detainee dictates whether his conditions of confinement are analyzed under the Eighth or Fourteenth Amendment. Until recently, "[c]laims for deliberate indifference to a . . . serious threat to the health or safety of a person in custody [were] analyzed under the same standard irrespective of whether they [we]re brought under the Eighth or Fourteenth Amendment." *Caiozzo*, 581 F.3d at 72. However, the Second Circuit's recent decision in *Darnell v. Pineiro*, 849 F.3d 17 (2d Cir. 2017), overruled *Caiozzo* "to the extent that it determined that the standard for deliberate indifference is the same under the Fourteenth Amendment as it is under the Eighth Amendment." *Id.* at 35. While the decision in *Darnell* proscribed a new analysis for claims brought by pretrial detainees, *see id.*, the analysis under the Eighth Amendment remains intact.

Here, Plaintiff's Complaint and the briefing on the instant Motions did not indicate whether Plaintiff was a convicted prisoner or a pretrial detainee at the time of the alleged violations. However, results from a New York State inmate information search indicate that Plaintiff (or someone with the same name and date of birth as Plaintiff) was first received into custody July 1995 and has an earliest release date of November 2017. *See* Inmate Information, New York State Department of Corrections and Community Supervision, http://nysdoccslookup.doccs.ny.gov/GCA00P00/WIQ3/WINQ130. Thus, it appears that Plaintiff

indifference to a serious medical condition." *Id.* at 72. "First, the plaintiff must establish that he suffered a sufficiently serious constitutional deprivation. Second, the plaintiff must demonstrate that the defendant acted with deliberate indifference." *Feliciano v. Anderson*, No. 15-CV-4106, 2017 WL 1189747, at *10 (S.D.N.Y. Mar. 30, 2017).

"The first requirement is objective: the alleged deprivation of adequate medical care must be sufficiently serious." *Spavone*, 719 F.3d at 138 (internal quotation marks omitted). Analyzing this objective requirement involves two inquiries: "[t]he first inquiry is whether the prisoner was actually deprived of adequate medical care," *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006), and the second "asks whether the inadequacy in medical care is sufficiently serious. This inquiry requires the [C]ourt to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner," *id.* at 280. To meet the objective requirement, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013). "There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). Nevertheless, the Second Circuit has presented the following non-exhaustive list of factors to consider when evaluating an inmate's medical condition: "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" *Id.* (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)). "The second requirement is subjective: the

_____

was a convicted prisoner when the alleged constitutional violations occurred in 2014. Accordingly, the Court analyzes Plaintiff's claims under the Eighth Amendment standard.

charged officials must be subjectively reckless in their denial of medical care." *Spavone*, 719 F.3d at 138. Under the second prong, the question is whether the defendant "knew of and disregarded an excessive risk to [a plaintiff's] health or safety and that [the defendant was] both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also drew the inference." *Caiozzo*, 581 F.3d at 72 (alterations and internal quotation marks omitted). In other words, "[i]n medical-treatment cases not arising from emergency situations, the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) (internal quotation marks omitted). "Deliberate indifference is a mental state equivalent to subjective recklessness," and it "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Id.* (internal quotation marks omitted). Mere negligence is not enough to state a claim for deliberate indifference. *See Walker*, 717 F.3d at 125; *Vail v. City of New York*, 68 F. Supp. 3d 412, 424 (S.D.N.Y. 2014). Relatedly, "mere disagreement over the proper treatment does not create a constitutional claim," and accordingly, "[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703.

With respect to the objective component, Plaintiff alleges that he suffered from "a most powerful pain . . . [on] the whole left side of [his] face" following treatment, and experiences persistent discomfort to this day. (Compl. 4.) A sufficiently serious condition is "a condition of urgency that may result in degeneration or extreme pain." *Chance*, 143 F.3d at 702. The Second Circuit has held that "not all claims regarding improper dental care will be constitutionally cognizable" and that "[d]ental conditions, like other medical conditions, may be of varying

severity." *Id.* "A cognizable claim regarding inadequate dental care, like one involving medical care, can be based on various factors, such as the pain suffered by the plaintiff." *Id.* at 703. Even though "[p]risoners are not entitled to a 'perfect plan for dental care,'" *Alster v. Goord*, 745 F. Supp. 2d 317, 333 (S.D.N.Y. 2010) (quoting *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986)), tooth decay and cavities may qualify as serious medical conditions, *see Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000); *see also Brown v. Mewar*, No. 07-CV-551, 2011 WL 573566, at *15 (W.D.N.Y. Feb. 14, 2011) (finding that a dental condition that "present[ed] medical urgency that might produce not death, but degeneration or extreme pain, including an inability to eat . . . constituted a sufficiently serious condition as defined under the Eighth Amendment"); *Rashid v. McGraw*, No. 01-CV-10996, 2006 WL 1378945, at *7 (S.D.N.Y. May 18, 2006) (noting that claims of inadequate dental care "can be based on various factors, such as the pain suffered by the plaintiff, the deterioration of the teeth due to a lack of treatment, or the inability to engage in normal activities" (internal quotation marks omitted)).

While CCS Defendants assert that "Plaintiff has . . . failed to submit proof that he suffered a serious injury as a direct result of [CCS] Defendants' actions," (Def.'s Mem. of Law in Supp. of Mot. for Summ. J. ("CCS Defs.' Mem.") 5 (Dkt. No. 42)), they do not dispute the genuineness of Plaintiff's complaints of pain, (*see, e.g.*, *id.* at 6 ("Plaintiff still has pain on his lower left side of his mouth.")). Construing the record, including Plaintiff's allegations, in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, the Court assumes that Plaintiff's dental pain constituted a sufficiently serious condition as defined under the Eighth Amendment.

With respect to the second prong, however, Plaintiff has not adequately alleged that CCS Defendants "acted with a sufficiently culpable state of mind." *Grimmett v. Corizon Med. Assocs.*

*of N.Y.*, No. 15-CV-7351, 2017 WL 2274485, at *4 (S.D.N.Y. May 24, 2017).  Simply put, Plaintiff's dental needs were not ignored.  The Parties do not dispute that Plaintiff underwent an annual dental evaluation on February 26, 2013, where Dr. Skinner identified four teeth in need of treatment.  (*See* Defs.' 56.1 ¶ 6; Pl.'s 56.1 ¶ 6.)  The record further reflects that Plaintiff declined treatment on March 26, 2013, because he was in "no pain" at the time.  (*See* Freeman Decl. Ex. C, at 2.)  The following year, on January 28, 2014, Plaintiff again had an annual dental review, during which Dr. Skinner identified four additional teeth with cavities.  (*See* Defs.' 56.1 ¶ 7; Pl.'s 56.1 ¶ 7.)  CCS Defendants contend that "Dr. Skinner encouraged [Plaintiff] to have dental work performed on some of his cavities at that same visit on January 28, 2014," (Defs.' 56.1 ¶ 8), while Plaintiff asserts that Dr. Skinner "ignored Plaintiff[']s initial refusal of treatment" and "proceeded to strongly try and persuade Plaintiff to have this treatment by emphasizing the seriousness of the decay," (Pl.'s 56.1 ¶ 8).  In any event, "[P]laintiff agreed to have [these teeth] treated."  (*Id.* ¶ 8(a); *see also* Defs.' 56.1 ¶ 8.)  At a follow-up visit on February 12, 2014, Plaintiff refused the scheduled dental treatment to the remaining teeth on the right side of his mouth "because of pain."  (*See* Defs.' 56.1 ¶ 9 (internal quotation marks omitted); Pl.'s 56.1 ¶ 9; Freeman Decl. Ex. C, at 7–8.)

CCS Defendants argue that "Plaintiff's federal civil rights claims against [Dr.] Skinner appear to be based solely on his own subjective belief that Dr. Skinner could have done something on February 12, 2014 to get him out of pain, even though Plaintiff refused to be seen." (CCS Defs.' Mem. 5.)  In response, Plaintiff contends that he "did make a complaint concerning pain, and treatment for that pain," and that "treatment for that pain was immediately ruled out." (Pl.'s Mem. of Law ("Pl.'s Summ. J. Opp'n") 6 (Dkt. No. 54).)  The record does not support this assertion.  (*See* Freeman Decl. Ex. H, at 20 ("Q: Did you ask about Plaintiff's pain?  A: I'm sure

I did.  I don't recall exactly, but with any patient, I would always ask why and what we can do to try and help . . . ."); *id.* at 24 ("Q: [W]as there any discussion about painkillers for [P]laintiff?  A: . . . [T]here could have been.  Usually there is, but sometimes the inmate will sign the refusal and just leave because they're upset that they're in pain . . . .  But if they stick around and we try to talk about it, we would offer Motrin.").)

As to the refusal to be treated, Plaintiff contends that his "signing of a refusal form" and its use "as a blanket instrument is misguided" because the form does not indicate "what exactly [was] being refused."  (Pl.'s Summ. J. Opp'n 6.)  Plaintiff asserts that "[i]f medication for pain was offered and refused by [P]laintiff," as Dr. Skinner testified, "the refusal form provides an area for dental staff to record this very specific refusal."  (*Id.*)  Plaintiff is correct that the "Refusal of Treatment" form provides spaces for "Refused medication" and "Refused dental care," and only the latter is checked.  (Freeman Decl. Ex. C, at 7.)  However, Plaintiff in his deposition testified that on February 12, 2014, he did not ask Dr. Skinner or the dental assistant for treatment for his pain.  (*See* Freeman Decl. Ex. F, at 64–65 ("Q: . . . [D]id you . . . ask [the dental assistant] if you could have treatment for your pain?  Or at least see the dentist, because he wasn't seeing you at that time? . . .  A: No, I did not specifically ask [the dental assistant] for that."); *id.* at 65 ("Q: . . . [D]id you ask [Dr. Skinner], can you please see me for the pain on the left side of my mouth?  A: I don't think that I said those words, no.").)  Thus, the record does not establish that "treatment for that pain was immediately ruled out" or unaddressed.  (Pl.'s Summ. J. Opp'n 6.)  Indeed, the record does not indicate that Plaintiff ever even made a request for treatment of his pain to Dr. Skinner or any employee of CCS.  To the extent Plaintiff claims that Roberts or Westchester County refused his requests to treat his pain, the Court addresses those

allegations below.  Accordingly, the Motion for Summary Judgment is granted as to Plaintiff's deliberate indifference claims.

b.  Right to Medical Information

In his opposition to CCS Defendants' Motion for Summary Judgment, Plaintiff includes arguments supporting the violation of his right to medical information in connection with his right to refuse the treatment he ultimately underwent.  (*See generally id.* at 2–4.)  CCS Defendants contend in reply that "[P]laintiff provides no evidence that he was not told of the risks and benefits of the treatment," but that "the issue is moot as the use of temporary filling material is irrelevant to the issue of whether Dr. Skinner was deliberately indifferent or committed malpractice which are the allegations contained in Plaintiff's Complaint."  (CCS Defs.' Reply Mem. of Law in Supp. of Mot. for Summ. J. ("CCS Defs.' Reply") 4 (Dkt. No. 56).)

To the extent CCS Defendants argue that such allegation that Plaintiff was not informed of the risks of the procedures are not explicitly included in Plaintiff's Complaint, the Court agrees.  However, in his Complaint, Plaintiff alleges that "[o]n February 21[,] 2014[,] [he] filed a formal grievance . . . contain[ing] the . . . information [about his treatment], in addition [to] . . . several possible solutions as a way of resolving [his] complaint against dental staff."  (Compl. 4.) Plaintiff cites to "exhibit D-1"—his grievance—which is attached to the Complaint.  (*See id*. at 21–24.)  In the grievance, Plaintiff requests that "dental staff . . . notify patients that they will only rec[ei]ve temporary fillings *before* treatment is started," and requests "an answer to the question of why [Plaintiff] wasn't informed that [his] tooth was in danger of being pulled *before* treatment."  (*Id.* at 21.)

While "a plaintiff's pro se status does not allow him to rely on conclusory allegations or unsubstantiated speculation to overcome a motion for summary judgment," *Almonte v. Florio*,

No. 02-CV-6722, 2004 WL 60306, at *3 n.10 (S.D.N.Y. Jan. 13, 2004) (italics omitted), where a

plaintiff "verifie[s] his complaint by attesting under penalty of perjury that the statements in the

complaint [are] true to the best of his knowledge," the "verified complaint is to be treated as an

affidavit for summary judgment purposes," *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995);

*see also, e.g.*, *Franco v. Kelly*, 854 F.2d 584, 587 (2d Cir. 1998) (noting that where a pro se

complaint is sworn, the pleading and its attached exhibits may be considered on a motion for

summary judgment).  Here, Plaintiff's Complaint is signed and dated and he "declare[s] under

penalty of perjury that the foregoing is true and correct."  (Compl. 11.)  Thus, the Court

considers the allegations made in Plaintiff's grievance and referenced and attached to his

Complaint, and turns to the merits of those claims.

A "person has a constitutionally protected liberty interest in refusing unwanted medical

treatment."  *Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 278 (1990).

> While decisions regarding medical treatment are normally private matters to be
> resolved between an individual and his or her physician, when these decisions occur
> in the prison setting, the government has a role.  The state is obligated to provide
> medical care to those that it has incarcerated and thus made dependent on the care
> and services that it provides.

*Pabon v. Wright*, 459 F.3d 241, 249 (2d Cir. 2006).  The Second Circuit has further explained

that

> an individual cannot exercise his established right to refuse medical treatment in a
> meaningful and intelligent fashion unless he has sufficient information about
> proposed treatment.  Absent knowledge of the risks or consequences that a
> particular treatment entails, a reasoned decision about whether to accept or reject
> that treatment is not possible.  We therefore hold that, in order to permit prisoners
> to exercise their right to refuse unwanted treatment, there exists a liberty interest in
> receiving such information as a reasonable patient would require in order to make
> an informed decision as to whether to accept or reject proposed medical treatment.

*Id.* at 249–50.  The Second Circuit held, however, that the right to this information "is far from

absolute."  *Id.* at 250.  "To assert a claim for a violation of this due process right to adequate

information, an inmate must allege: '(1) government officials failed to provide him with such information; (2) this failure caused him to undergo medical treatment that he would have refused had he been so informed; and (3) the officials' failure was undertaken with deliberate indifference to the prisoner's right to refuse medical treatment.'" *Alston v. Bendheim*, 672 F. Supp. 2d 378, 384 (S.D.N.Y. 2009) (quoting *Pabon*, 459 F.3d at 246). Put another way, "[t]he plaintiff must show that the doctor withheld information with the intent that the prisoner agree to treatment that he otherwise would refuse." *Vega v. Rell*, No. 09-CV-737, 2012 WL 2860793, at *8 (D. Conn. July 9, 2012).

While Plaintiff argues that "if [he] would have known that he would be rec[ei]ving temporary fillings he would have been more firm in his refusal," this does not demonstrate that he would have declined the procedure altogether. (Pl.'s Summ. J. Opp'n 3.) In any event, even were the Court to assume Plaintiff would have refused the fillings had he been given this information, he has not established that Dr. Skinner withheld information about the temporary nature of the fillings with the *intent* of having Plaintiff undergo treatment. *See Smith v. Corizon Health Servs.*, No. 14-CV-8839, 2015 WL 6123563, at *2 (S.D.N.Y. Oct. 16, 2015) ("The . . . test for deliberate indifference requires that [the] [p]laintiff prove that [the] [d]efendants deliberately withheld information about the [medical treatment], specifically for the purpose of inducing an inmate to accept [it]. It is not enough for the health worker to merely fail to inform a prisoner of the risks and side effects . . . ." (footnote and citations omitted)); *Lara v. Bloomberg*, No. 04-CV-8690, 2008 WL 123840, at *5 (S.D.N.Y. Jan. 8, 2008) (holding that the plaintiff failed to satisfy a claim of failure to receive medical information because he "[did] not, and indeed . . . [could not], allege that the doctors' purported failure to inform [him] of the side effects of his medication were driven by the doctors' desire to require [the plaintiff] to accept the

treatment offered"); *see also Pierce v. Pillai*, No. 14-CV-1477, 2016 WL 6774225, at *5 (D.

Conn. Nov. 15, 2016) ("[The] [p]laintiff must show that the doctor withheld information with the

intent that the prisoner agree to treatment that he otherwise would refuse.").  Indeed, attached to

Plaintiff's opposition is a letter from CCS Defendants' counsel stating that "Dr. Skinner's rate of

pay is based on a full-time salaried position with CCS, and [he] does not receive any 'incentive'"

based on procedures performed.  (Pl.'s Summ. J. Opp'n 14.)  "Inadvertent failures to impart

medical information," "simple lack of due care," and "simple negligence do not make out a

violation of either the substantive or procedural aspects of the Due Process Clause."  *Lara*, 2008

WL 123840, at *4 (italics and internal quotation marks omitted).[7]  Therefore, the Court grants

the Motion for Summary Judgment as to Plaintiff's claims regarding the right to medical

information.[8]

---

[7] As to Plaintiff's claims that he "wasn't informed that [his] tooth was in danger of being pulled *before* treatment," (Compl. 21), further in his grievance, Plaintiff contradicts this claim by stating "[t]hey emphasized the rapid decaying and told me that I was in danger of having several teeth pulled if I didn't get the fillings," (*id.* at 22).

[8] In his opposition to CCS Defendants' Motion for Summary Judgment, Plaintiff also raises arguments in support of an access to the courts claim against County Defendants.  (*See* Pl.'s Summ. J. Opp'n 11 ("Roberts refused to provide copies [of the grievance] to [P]laintiff."); *id.* at 12 ("Roberts refused to give [P]laintiff copies of documents that policy allowed for [P]laintiff to have at the time."); *id.* at 12–13 ("Roberts['] actions created an unjust economic burden on [P]laintiff.  These actions also prevented [P]laintiff from providing these withheld documents as exhibits in the [C]omplaint."); *id.* at 13 ("Roberts['] testimony that inmates are not provided with copies of their lawful documents is further evidence of another suspect policy/practice and custom of Westchester County.").)

The Court declines to consider these arguments in deciding the Motion for Summary Judgment brought by CCS Defendants.  (*See* CCS Defs.' Reply 6 ("CCS Defendants have not responded to any arguments by Plaintiff involving [County Defendants], as they are represented by separate counsel who has filed its own pending Motion [T]o Dismiss.").)

### c.  Supplemental Jurisdiction

The Court also construes Plaintiff's Complaint as asserting claims of malpractice and negligence against CCS Defendants for the performance of unnecessary dental work.  (*See* Compl. 6 (Plaintiff determined that he had "required no treatment at all" and that "[t]he procedures already performed [were] unnecessary").)  As the Court ultimately dismisses the federal claims against these Defendants, it need not exercise its discretion to maintain supplemental jurisdiction over any pending state-law claims.  *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . .").  Thus, the Court declines to exercise supplemental jurisdiction over these claims arising under state tort law.  *See Matican v. City of New York*, 524 F.3d 151, 154–55 (2d Cir. 2008) ("[I]f [the plaintiff] has no valid claim under § 1983 against any defendant, it is within the district court's discretion to decline to exercise supplemental jurisdiction over the pendent state-law claims."); *Thomas v. Ariel West*, — F. Supp. 3d — , 2017 WL 1031277, at *9 (S.D.N.Y. Mar. 15, 2017) (granting summary judgment on the plaintiff's federal claims and "declin[ing] to exercise supplemental jurisdiction of [the] [p]laintiff's state- and city-law claims relating to those alleged violations").  The Court thus turns to County Defendants' Motion To Dismiss.

### B.  Motion To Dismiss

#### 1.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(alteration and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2)); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district

court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

Because Plaintiff is proceeding pro se, the Court must construe his pleadings liberally and "interpret them to raise the strongest arguments that they suggest." *Maisonet v. Metro. Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 347 (S.D.N.Y. 2009) (internal quotation marks omitted); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (same). This admonition "applies with particular force when a plaintiff's civil rights are at issue." *Maisonet*, 640 F. Supp. 2d at 348; *see also McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004) (same). However, the liberal treatment afforded to pro se litigants does not excuse a pro se party "from compliance with relevant rules of procedural and substantive law." *Maisonet*, 640 F. Supp. 2d at 348 (internal quotation marks omitted).

### 2. Analysis

#### a. Insufficient Service

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007). Valid service is a prerequisite for a federal court to assert personal jurisdiction over a claim. *See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). "When a defendant moves to dismiss under Rule 12(b)(5), the plaintiff bears the burden of proving adequate service." *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010)

(alteration and internal quotation marks omitted); *see also Tomney v. Int'l Ctr. for the Disabled*, No. 02-CV-2461, 2003 WL 1990532, at *3 (S.D.N.Y. Apr. 29, 2003) ("Once a defendant raises a challenge to the sufficiency of service of process, the plaintiff bears the burden of proving its adequacy." (internal quotation marks omitted)).  In determining the sufficiency of service, the Court "must look to matters outside the complaint to determine what steps, if any, the plaintiff took to effect service."  *C3 Media & Mktg. Grp., LLC v. Firstgate Internet, Inc.*, 419 F. Supp. 2d 419, 427 (S.D.N.Y. 2005) (internal quotation marks omitted); *see also PH Int'l Trading Corp. v. Nordstrom, Inc.*, No. 07-CV-10680, 2009 WL 859084, at *3 (S.D.N.Y. Mar. 31, 2009) ("A court may, on a Rule 12(b)(5) motion to dismiss, consider affidavits and documents submitted by the parties without converting the motion into one for summary judgment under Rule 56." (alteration and internal quotation marks omitted)).

Rule 4(m) requires a plaintiff to effect proper service on a defendant within 90 days of the filing of the complaint.  *See* Fed. R. Civ. P. 4(m).[9]  If a plaintiff fails to do so, the Court "must dismiss the action without prejudice against [the] defendant or order that service be made within a specified time."  *Id.*  However, if the plaintiff has demonstrated good cause for a failure to effect service, the court *must* extend the time to effect service.  *Id.*; *see also Blessinger v. United States*, 174 F.R.D. 29, 31 (E.D.N.Y. 1997) (noting that if a plaintiff demonstrates good cause, "the extension [to serve] is mandatory").  To determine whether a plaintiff has demonstrated good cause, "[c]ourts generally consider three factors . . . : (1) whether the delay resulted from

---

[9] Although not relevant for purposes of this Opinion, the Court notes that, at the time Plaintiff filed this Action in June 2015, the former 120-day period provided for by Rule 4(m) was in effect.  *See, e.g.*, *Rosado-Acha v. Red Bull Gmbh*, No. 15-CV-7620, 2016 WL 3636672, at *9 (S.D.N.Y. June 29, 2016) ("[U]nder Federal Rule of Civil Procedure 4(m), prior to its December 2015 amendment, a plaintiff was required to serve a defendant with a summons and a copy of the complaint within 120 days after the complaint was filed.").

inadvertence or whether a reasonable effort to effect service has occurred, (2) prejudice to the

defendant, and (3) whether the plaintiff has moved for an enlargement of time to effect service

under Rule 6(b) of the Federal Rules of Civil Procedure." *Echevarria v. Dep't of Corr. Servs. of

N.Y.C.*, 48 F. Supp. 2d 388, 392 (S.D.N.Y. 1999).

      Here, the docket reflects that service was executed upon Roberts on June 6, 2016 and

accepted by Officer Eveans.  (*See* Dkt. No. 32.)  County Defendants contend that Officer Eveans

was not authorized to accept personal service on behalf of Roberts and that "Plaintiff has neither

alleged the existence of nor cited to/produced from the public records maintained by the

Westchester County Clerk, any filing by Christopher Roberts appointing Officer Ev[e]ans as an

agent to accept personal service on behalf of Roberts."  (Defs.' Cty. of Westchester and Sergeant

Roberts Mem. of Law in Supp. of Mot. To Dismiss the Compl. ("Cty. Defs.' Mem.") 4–5 (Dkt.

No. 50).)

      Although the "special solicitude afforded to pro se civil rights litigants does not give

them license to violate the Federal Rules of Civil Procedure," *Self v. LaValley*, No. 10-CV-1463,

2013 WL 1294448, at *3 (N.D.N.Y. Mar. 27, 2013) (italics omitted), the Court has an obligation

"to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of

important rights because of their lack of legal training," *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.

1983) (italics omitted).  Moreover, the Second Circuit has a "clearly expressed preference that

litigation disputes be resolved on the merits."  *Mejia v. Castle Hotel, Inc.*, 164 F.R.D. 343, 346

(S.D.N.Y. 1996); *see also Cody v. Mello*, 59 F.3d 13, 15 (2d Cir. 1995) (same).

      In an Order of Service dated June 3, 2016, the Court instructed the Clerk of Court "to fill

out a U.S. Marshals Service Process Receipt and Return form" for County Defendants "and

deliver to the Marshals Service all of the paperwork necessary for the Marshals Service to effect

service upon these defendants." (Dkt. No. 27.) The Marshals Service was additionally directed to effect service upon County Defendants within 14 days of the date of the Order. (*See id.*)

At the Court's instruction, Plaintiff relied on the Marshals Service to carry out his service obligations in the allotted time and was seemingly unaware that service was ineffective. Additionally, County Defendants do not allege any prejudice to Roberts. The Court thus finds that Plaintiff has demonstrated good cause for his failure to serve Roberts and is unwilling to dismiss the claims against him on this basis.

### b. Failure to Exhaust Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [§] 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement applies to all personal incidents while in prison, *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (holding exhaustion is required for "all inmate suits about prison life, whether they involve general circumstances or particular episodes"); *see also Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012) (per curiam) (same), and includes actions for monetary damages despite the fact that monetary damages are not available as an administrative remedy, *Booth v. Churner*, 532 U.S. 731, 741 (2001) (holding exhaustion is required "regardless of the relief offered through administrative procedures"). Moreover, the PLRA mandates "'proper exhaustion'—that is, 'using all steps that the agency holds out, and doing so properly,' . . . [which] entails . . . 'completing the administrative review process in accordance with the applicable procedural rules.'" *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (alteration omitted) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88, 90 (2006)); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007)

("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").

As a general matter, the New York State Department of Corrections and Community Supervision Inmate Grievance Program ("IGP") outlines the procedures that apply to grievances filed by inmates in New York State correctional facilities. The IGP provides for a three-step grievance process. *See* 7 N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") § 701 et seq.; *see also Abdallah v. Ragner*, No. 12-CV-8840, 2013 WL 7118083, at *2 (S.D.N.Y. Nov. 22, 2013) (noting that "[DOCCS] provides an administrative remedy for many prisoners' claims," which is "a grievance system available to prisoners in custody at state prisons" (citing 7 N.Y.C.R.R. § 701.1(c))). Under the framework used in typical cases, an inmate must first file a complaint at the facility where the inmate is housed within 21 calendar days of an alleged occurrence. 7 N.Y.C.R.R. § 701.5(a)(1). The second step in the tripartite framework is for the grievant or any direct party to appeal the Inmate Grievance Review Committee's decision to the prison superintendent within seven calendar days after receipt of the written response, although the appealing party can seek an exception to the time limit. *See id.* § 701.5(c)(1). The third and final step is to appeal the superintendent's decision to the Central Office Review Committee (CORC), which the prisoner must do within seven days of the superintendent's written response to the grievance. *Id.* § 701.5(d)(1)(i). Here, too, an inmate may request an exception to the time limit. *See id.* "[O]nly after CORC has reviewed the appeal and rendered a decision are New York's grievance procedures exhausted." *Gardner v. Daddezio*, No. 07-CV-7201, 2008 WL 4826025, at *2 (S.D.N.Y. Nov. 5, 2008).

The PLRA does, however, "contain[] its own, textual exception to mandatory exhaustion." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). The Supreme Court recently explained:

> Under § 1997e(a), the exhaustion requirement hinges on the "availab[ility]" of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones. And that limitation on an inmate's duty to exhaust . . . has real content. . . . [A]n inmate is required to exhaust those, but only those, grievance procedures that are "capable of use" to obtain "some relief for the action complained of."

*Id.* at 1858–59 (quoting *Booth*, 532 U.S. at 738).

There are "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 1859. First, an "administrative procedure is unavailable when . . . it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* Third, an administrative remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860. These three circumstances "do not appear to be exhaustive," *Williams v. Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016), but they do "guide the [c]ourt's inquiry," *Khudan v. Lee*, No. 12-CV-8147, 2016 WL 4735364, at *5 (S.D.N.Y. Sept. 8, 2016).

A plaintiff need not plead that one of these three circumstances exists or that he did in fact exhaust his administrative remedies because the "[f]ailure to exhaust administrative remedies is an affirmative defense under the PLRA, not a pleading requirement." *Williams*, 829 F.3d at 122. Instead, County Defendants bear the burden of proving that Plaintiff failed to

exhaust available administrative remedies.  *McCoy v. Goord*, 255 F. Supp. 2d 233, 248 (S.D.N.Y. 2003) ("[The] defendants bear the burden of proof and prisoner plaintiffs need not plead exhaustion with particularity."); *see also Williams*, 829 F.3d at 122 ("[I]nmates are not required to specifically plead or demonstrate exhaustion in their complaints." (internal quotation marks omitted)).  Thus, a motion to dismiss pursuant to Rule 12(b)(6) for failure to exhaust should be granted only if "nonexhaustion is clear from the face of the complaint."  *Lovick v. Schriro*, No. 12-CV-7419, 2014 WL 3778184, at *4 (S.D.N.Y. July 25, 2014) (alterations and internal quotation marks omitted); *see also Lee v. O'Harer*, No. 13-CV-1022, 2014 WL 7343997, at *3 (N.D.N.Y. Dec. 23, 2014) ("Dismissal under Rule 12(b)(6) for failure to exhaust is appropriate if such failure is evidenced on the face of the complaint and incorporated documents."); *Sloane v. Mazzuca*, No. 04-CV-8266, 2006 WL 3096031, at *4 (S.D.N.Y. Oct. 31, 2006) ("[B]y characterizing non-exhaustion as an affirmative defense, the Second Circuit suggests that the issue of exhaustion is generally not amenable to resolution by way of a motion to dismiss." (internal quotation marks omitted)).

In their Motion To Dismiss, County Defendants assert that "[P]laintiff did not appeal to the State of New York's Citizen Policy and Complaint Review Council, which is the final step in the grievance process regarding appeals of an inmate's grievance."  (Cty. Defs.' Mem. 6.) County Defendants acknowledge that "[P]laintiff has annexed to his [C]omplaint evidence of a grievance concerning his alleged inadequate medical treatment," but contend that "this was not the entire grievance executed by the [P]arties."  (*Id*.)  County Defendants reference Exhibit D to their Motion, "which contains . . . [P]laintiff's entire grievance documents, including Sergeant Roberts' determination, [P]laintiff's appeal, and Warden Orlando's denial of [P]laintiff's appeal, and acceptance by [P]laintiff of the [d]ecision of Warden Orlando as evidenced by his signature

indicating the same," as well as Exhibit C, an affidavit of Roberts, "indicat[ing] . . . [P]laintiff did not appeal to the State of New York's Citizen's Policy and Complaint Review Council." (*Id.*)

It is not clear from the face of the Complaint that Plaintiff failed to fully exhaust his administrative remedies before commencing this Action. In the section of the standard prisoner complaint form that asks, "[w]hat steps, in any, did [Plaintiff] take to appeal [the denial]? Describe all efforts to appeal to the highest level of the grievance process," (Compl. 7), Plaintiff responds that he "notified the staff member in charge, S[ergeant] Roberts[,] of [his] desire to appeal the denial," (*id.*). It is unclear whether the appeal Plaintiff references is the third and final step. While Plaintiff further contends that he "was transferred the day after [his] appeal was denied, making any further action at the administrative level moot," Plaintiff does not clarify whether he actually *took* any further action, despite its alleged futility. (*Id.* at 8.) Additionally, it is not clear if Plaintiff is contending that his transfer rendered his administrative remedies unavailable under *Ross*. *See* 136 S. Ct. at 1858. Thus, the Court cannot find that "nonexhaustion is clear from the face of the complaint." *Lovick*, 2014 WL 3778184, at *4. Accordingly, the Court declines to dismiss Plaintiff's Complaint on the basis of County Defendants' exhaustion defense.

### c. *Monell*

County Defendants further contend that "[t]here are no allegations that the County had a policy, custom or practice of any kind which was unconstitutional on its face" and that "[t]here is no respondeat superior theory of liability available as against the County in its position as merely an employe[r] of Defendant Roberts." (Cty. Defs.' Mem. 10.) The Court agrees.

A municipal defendant "cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978) (italics

omitted); *see also Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (reaffirming that

"a municipality cannot be held liable on a respondeat superior basis for the tort of its employee"

(italics omitted)).  Rather, to prevail on a § 1983 claim against a municipal employer, Plaintiff

must satisfy the requirements set forth in *Monell* and its progeny, which adhere to the well-

settled principle that "Congress did not intend municipalities to be held liable [under § 1983]

unless action pursuant to official municipal policy of some nature caused a constitutional tort."

*Monell*, 436 U.S. at 691; *see also Hunter v. City of New York*, 35 F. Supp. 3d 310, 322 (E.D.N.Y.

2014) ("In order to sustain a claim for relief pursuant to § 1983 against a municipal defendant, a

plaintiff must show the existence of an official policy or custom that caused injury and a direct

causal connection between that policy or custom and the deprivation of a constitutional right.").

    A plaintiff may satisfy the "policy or custom" requirement by alleging one of the

following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by
> government officials responsible for establishing the municipal policies that caused
> the particular deprivation in question; (3) a practice so consistent and widespread
> that, although not expressly authorized, constitutes a custom or usage of which a
> supervising policy-maker must have been aware; or (4) a failure by policymakers
> to provide adequate training or supervision to subordinates to such an extent that it
> amounts to deliberate indifference to the rights of those who come into contact with
> the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted).

In addition, a plaintiff must establish a causal link between the municipality's policy, custom, or

practice and the alleged constitutional injury.  *See Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d

Cir. 2008) (holding that "a plaintiff must demonstrate that, through its deliberate conduct, the

municipality was the moving force behind the alleged injury" (internal quotation marks

omitted)); *Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL 1379652, at *12 (S.D.N.Y.

Mar. 26, 2015) ("[T]here must be a direct causal link between a municipal policy or custom and

the alleged constitutional deprivation." (internal quotation marks omitted)); *Johnson v. City of New York*, No. 06-CV-9426, 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (noting that "a plaintiff must establish a causal connection—an affirmative link—between the [municipal] policy and the deprivation of his constitutional rights" (internal quotation marks omitted)).

"Normally, a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality." *Tieman*, 2015 WL 1379652, at *12 (internal quotation marks omitted); *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 841 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy . . . [that] can be attributed to a municipal policymaker."); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation."). There are at least two circumstances that courts have expressly identified as constituting a municipal policy: "where there is an officially promulgated policy as that term is generally understood," and "where a single act is taken by a municipal employee who, as a matter of [s]tate law, has final policymaking authority in the area in which the action was taken." *Newton v. City of New York,* 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008). "A municipal 'custom,' on the other hand, need not receive formal approval by the appropriate decisionmaker," *id.*, but nonetheless "may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law," *Kucharczyk v. Westchester County*, 95 F. Supp. 3d 529, 539 (S.D.N.Y. 2015) (internal quotation marks omitted); *see also Tieman*, 2015 WL 1379652, at *16 ("To

prevail on this theory of municipal liability, . . . a plaintiff must prove that the custom at issue is permanent and well-settled.").

Plaintiff's Complaint neither cites to nor describes any official municipal policy or practice, nor does he allege that any individual had official policymaking authority and took action pursuant to that authority. Additionally, the Complaint is devoid of any mention of the County's actions, let alone facts that support the existence of a tacit, widespread custom sufficient to sustain a claim for relief under *Monell*. While Plaintiff's opposition to County Defendants Motion To Dismiss for the first time makes mention of policies and customs of the County, (Pl.'s Statement in Opp'n to 12(b)(6) Mot. ("Pl.'s Mot. To Dismiss Opp'n") 6 (Dkt. No. 55) ("The record in this case establishes that the custom and policy of Westchester County is to be aware that there are inmates who are suffering in their pain"); *id.* at 11 ("Roberts['] testimony that inmates are not provided with copies of their lawful documents is further evidence of another suspect policy/practice and custom of Westchester County.")), "[c]onclusory allegations that there was such a policy or custom, without identifying or alleging supporting facts, is insufficient to state a claim," *Maynard v. City of New York*, No. 13-CV-3412, 2013 WL 6667681, at *4 (S.D.N.Y. Dec. 17, 2013); *see also Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 124 (2d Cir. 1991) (reaffirming "that an allegation of municipal policy or custom would be insufficient if wholly conclusory"); *5 Borough Pawn, LLC v. City of New York*, 640 F. Supp. 2d 268, 300 (S.D.N.Y. 2009) (dismissing a *Monell* claim where the "plaintiffs fail[ed] to allege any facts showing that there is a [c]ity policy—unspoken or otherwise—that violates the Federal Constitution"); *cf. Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987) (holding that "complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of

fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning"). Accordingly, Plaintiff's claims against the County are dismissed.

### d. Qualified Immunity

County Defendants further contend that Roberts is entitled to qualified immunity and thus "immune to the allegations in the instant lawsuit." (Cty. Defs.' Mem. 9–10.) "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "[Qualified] immunity protect[s] government's ability to perform its traditional functions . . . by helping to avoid unwarranted timidity in performance of public duties, ensuring that talented candidates are not deterred from public service, and preventing the harmful distractions from carrying out the work of government that can often accompany damages suits." *Filarsky v. Delia*, 566 U.S. 377, 389–90 (2012) (second alteration in original) (internal quotation marks omitted). Qualified immunity shields a defendant from standing trial or facing other burdens of litigation "if either (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 250 (2d Cir. 2001) (internal quotation marks omitted).

County Defendants argue that "[b]ecause S[ergeant] Roberts properly processed [P]laintiff's grievance by first receiving it, signing it, and then forwarding the grievance to Michael Kelly, CCS employee, and then basing his determination on the information received

from Mr. Kelly, he complied with all rules and regulations regarding the adjudication of grievances." (Cty. Defs.' Mem. 9 (citation omitted).)[10]

To the extent Plaintiff's allegations against Roberts relate simply to Roberts' denial of Plaintiff's grievance, (*see* Compl. 4 ("On February 21[,] 2014[,] [Plaintiff] filed a formal grievance with facility staff member . . . Roberts. The grievance contained . . . several possible solutions as a way of resolving [Plaintiff's] complaint. . . . The entire grievance, including each of [Plaintiff's] suggestions to resolve the complaint, w[as] denied.")), the Court agrees with County Defendants that Roberts is entitled to qualified immunity on this claim, *see McIntosh v. United States*, No. 14-CV-7889, 2016 WL 1274585, at *20 (S.D.N.Y. Mar. 31, 2016) ("[Q]ualified immunity may shield the prison official who denies an inmate's grievance following an investigation."); *see also Cancel v. Mazzuca*, 205 F. Supp. 2d 128, 145–46 (S.D.N.Y. 2002) (same). Plaintiff does not allege any malfeasance on behalf of Roberts with respect to the denial itself, but rather, appears displeased with the outcome of the process.

---

[10] In their argument for qualified immunity, (*see* Cty. Defs.' Mem. 9), County Defendants cite to the Affidavit of Captain Christopher Roberts (the "Roberts Affidavit"), attached as Exhibit C to their Motion To Dismiss, (*see* Decl. in Supp. of Defs.' Mot. To Dismiss the Compl. Ex. C (Dkt. No. 49)). The Court generally cannot consider affidavits and exhibits on a motion to dismiss. *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); *see also Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 44 n.1 (2d Cir. 2014) (noting a court ruling on a Rule 12(b)(6) motion "may consider the complaint[,] . . . any written instrument attached to the complaint as an exhibit[,] or any statements or documents incorporated in it by reference," as well as "matters of which judicial notice may be taken, and documents either in [the] plaintiffs' possession or of which [the] plaintiffs had knowledge and relied on in bringing suit" (alterations and internal quotation marks omitted); *Leonard F.*, 199 F.3d at 107 ("In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." (internal quotation marks omitted)). The Roberts Affidavit is neither attached to the Complaint, nor incorporated in it by reference, and the Court cannot take judicial notice of this exhibit.

As to Plaintiff's claim that Roberts denied him *copies* of his grievance, (*see* Compl. 8 ("Roberts refused to give [Plaintiff] any copies of [his] formal grievance and the resulting appeal, stating if [Plaintiff] want[ed] copies, [he would] have to 'sign off.'"), the circumstances surrounding the alleged denial are unclear from Plaintiff's Complaint.  Plaintiff does not assert why he could not or did not "sign off" to receive the records as Roberts requested, though Plaintiff's opposition suggests that the imposition of a fee associated with the copies, "created an unjust economic burden on [P]laintiff."  (Pl.'s Mot. To Dismiss Opp'n 10–11.)  County Defendants offer no response to Plaintiff's allegations regarding the refusal to provide Plaintiff with copies, (*see* Cty. Defs.' Mem. 9–10), but in response to County Defendants' Motion, Plaintiff asserts that the "all copies should have been provided for free to [P]laintiff," (Pl.'s Mot. To Dismiss Opp'n 10).[11]  "Courts in the Second Circuit have repeatedly held that a prisoner does not have a constitutional right to free copies and prison regulations that limit access to such copies are reasonably related to legitimate penological interests."  *Muhammad v. Hodge*, No. 07-CV-232, 2010 WL 1186330, at *5 (W.D.N.Y. Mar. 24, 2010) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)).  Therefore, Roberts actions "did not violate clearly established law."  *Johnson*, 239 F.3d at 250.  Roberts is thus entitled to qualified immunity and Plaintiff's claims against him are dismissed.[12]

---

[11] Additionally, to extent Plaintiff's allegations relate to the denial of copies of his medical records, (*see* Compl. 8 (requesting an order that DOCCS "staff honor patient/inmate request[s] for information, including copies of medical records")), the Court notes that at least one court within the Second Circuit has held that "a prisoner has no constitutional right to access or obtain copies of his prison mental health records," *Moore v. Chapedelaine*, No. 15-CV-775, 2015 WL 4425799, at *3 (D. Conn. July 17, 2015); *see also Noel v. Brian Moore*, No. 16-CV-1328, 2017 WL 435813, at *3 (N.D.N.Y. Feb. 1, 2017) (holding "that [the] [p]laintiff's allegations regarding the destruction of his copies of his medical records do not give rise to a claim for the violation of his constitutional rights cognizable under 42 U.S.C. § 1983").

[12] Should Plaintiff choose to file an Amended Complaint, he should include details as to whether he filed an appeal of the superintendent's decision and whether Roberts' failure to

## III. Conclusion

For the reasons stated above, CCS Defendants' Motion for Summary Judgment and County Defendants' Motion To Dismiss are granted. In light of Plaintiff's pro se status, and because this is the first adjudication of Plaintiff's claims on the merits, Plaintiff's claims against the County Defendants, and County Defendants only, are dismissed without prejudice. If Plaintiff wishes to file an Amended Complaint alleging additional facts and otherwise addressing the deficiencies identified above with respect to County Defendants, Plaintiff must do so within 30 days of the date of this Opinion & Order. The failure to do so may result in the dismissal of the claims against County Defendants with prejudice.

Within seven days of the date of this Opinion & Order, County Defendants shall provide the Court with a service address for Defendant Roberts or confirm that the current address is still the proper address at which to effect service. Should Plaintiff choose to file an Amended Complaint, the Court will issue an Order of Service.

The Clerk of Court is respectfully directed to terminate the pending Motions, *(see* Dkt. Nos. 41, 48), enter judgment in favor of Defendants CCS and Dr. Skinner, and mail a copy of this Opinion & Order to Plaintiff at the address listed on the docket.

SO ORDERED.

Dated:     September 25, 2017
           White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

provide copies of Plaintiff's grievances impeded Plaintiff's ability to administratively exhaust his claims.